**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

KENNETH B. GIBBS,

        Plaintiff,

          v.

CARSON, et al.,

        Defendants.

_____/

No. C-13-0860 TEH (PR)

ORDER SERVING COGNIZABLE CLAIMS

(Doc. # 15)

    Plaintiff Kenneth Gibbs, an inmate at Pelican Bay State Prison (PBSP) in Crescent City, California, commenced this action on February 26, 2013 by submitting a letter to the Court. Subsequently, Plaintiff properly filed a complaint on the Court's civil rights form.  On April 24, 2013, the Court issued an Order dismissing the complaint with leave to amend and, on May 15, 2013, Plaintiff filed an amended complaint.  The amended complaint is now before the Court for initial screening pursuant to 28 U.S.C. § 1915A.

I

    Federal courts must engage in a preliminary screening of cases in which prisoners seek redress from a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a). The court must identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint "is frivolous, malicious, or fails to state a claim upon which relief may be granted," or "seeks monetary relief from a defendant who is immune from such relief."  Id. § 1915A(b).  Pleadings filed by pro se

1 litigants, however, must be liberally construed.  <u>Hebbe v. Pliler</u>,

2 627 F.3d 338, 342 (9th Cir. 2010); <u>Balistreri v. Pacifica Police</u>

3 <u>Dep't.</u>, 901 F.2d 696, 699 (9th Cir. 1990).

4      To state a claim under 42 U.S.C. § 1983, a plaintiff must

5 allege two essential elements:  (1) that a right secured by the

6 Constitution or laws of the United States was violated, and (2) that

7 the alleged violation was committed by a person acting under the

8 color of state law.  <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988).

9      Liability may be imposed on an individual defendant under

10 § 1983 if the plaintiff can show that the defendant proximately

11 caused the deprivation of a federally protected right.  <u>Leer v.</u>

12 <u>Murphy</u>, 844 F.2d 628, 634 (9th Cir. 1988); <u>Harris v. City of</u>

13 <u>Roseburg</u>, 664 F.2d 1121, 1125 (9th Cir. 1981).  A person deprives

14 another of a constitutional right within the meaning of § 1983 if he

15 does an affirmative act, participates in another's affirmative act

16 or omits to perform an act which he is legally required to do, that

17 causes the deprivation of which the plaintiff complains.  <u>Leer</u>, 844

18 F.2d at 633.  The inquiry into causation must be individualized and

19 focus on the duties and responsibilities of each individual

20 defendant whose acts or omissions are alleged to have caused a

21 constitutional deprivation.  <u>Id.</u>  Sweeping conclusory allegations

22 will not suffice; the plaintiff must instead "set forth specific

23 facts as to each individual defendant's" deprivation of protected

24 rights.  <u>Id.</u> at 634.

25                     II

26                     A

27      In the April 25, 2013 Order, the Court noted that

28 **2**

Plaintiff's allegations could be sorted into three main categories of constitutional violations: (1) deliberate indifference to treat his serious medical needs; (2) retaliation for filing grievances and lawsuits; and (3) placement into administrative segregation (ad seg) upon false charges and without due process.  The Court explained that, as written, the complaint did not state claims upon which relief could be granted and indicated how Plaintiff could remedy the deficiencies.  The Court also noted that the three types of claims were improperly joined and instructed Plaintiff to file, in an amended complaint, the claims he wished to proceed with in this case and, if he wished, to file a new complaint containing the unrelated claims.  In his amended complaint, Plaintiff realleges all three categories of violations.  In all, Plaintiff's amended complaint contains over 20 claims and names 40 individuals as Defendants.  In the interest of judicial efficiency, the Court will address all these claims in this Order.

**B**

Plaintiff attempts to state violations based on deliberate indifference to his serious medical needs in claims 1, 2, 4, 8, 9, and 15.

Deliberate indifference to serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment.  Estelle v. Gamble, 429 U.S. 97, 104 (1976); McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).  A determination of "deliberate indifference" involves an examination of two elements: the seriousness of the

prisoner's medical need and the nature of the defendant's response to that need.  <u>Id.</u> at 1059.

A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain."  <u>Id</u>.  The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a "serious" need for medical treatment.  <u>Id.</u> at 1059-60.

A prison official is deliberately indifferent if he or she knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it.  <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994).  The prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but he "must also draw the inference."  <u>Id.</u>  If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.  <u>Gibson v. County of Washoe</u>, 290 F.3d 1175, 1188 (9th Cir. 2002).  "A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim."  <u>Franklin v. Oregon</u>, 662 F.2d 1337, 1344 (9th Cir. 1981).  A claim of medical malpractice or negligence is insufficient to make out a violation of the Eighth Amendment.  <u>Toguchi v. Chung</u>, 391 F.3d 1051, 1060-61 (9th Cir. 2004); <u>Hallett v. Morgan</u>, 296 F.3d 732, 744

4

(9th Cir. 2002).

In claim 1, Plaintiff claims that Dr. Evans "neglected to transfer Plaintiff to a hospital when Plaintiff was infected with an incurable and debilitating disease." Plaintiff alleges that, after he told Dr. Evans that he was passing blood through his rectum and requested treatment for his stomach, Dr. Evans scheduled Plaintiff for a colonoscopy to check for prostate cancer. The colonoscopy showed that Plaintiff was infected with herpes.

These allegations do not show that Dr. Evans was deliberately indifferent to Plaintiff's medical needs. On the contrary, they show that Dr. Evans was responsive to Plaintiff's medical needs by immediately scheduling him for a colonoscopy to check for suspected prostrate cancer based on Plaintiff's reported symptoms. Therefore, this claim against Dr. Evans is dismissed.

In claim 2, Plaintiff claims that Dr. Feimer misdiagnosed his herpes as food allergies and ulcers. A misdiagnosis might amount to neglect, but does not constitute deliberate indifference to a serious medical need. Therefore, this claim against Dr. Feimer is dismissed.

In claim 4, Plaintiff alleges that he had an outbreak of blisters inside his mouth and requested treatment from Dental Assistant Tupman on three occasions and Ms. Tupman refused to treat him each time. These allegations, liberally construed, state a claim of deliberate indifference against Ms. Tupman.

In claims 8 and 9, Plaintiff alleges that he requested treatment from Dr. Crinklaw and Dr. Malo-Clines for his herpes and that these doctors refused to treat him. Liberally construed, these

1 allegations state a claim against these Defendants.

2       In claim 15, Plaintiff claims that Officer Davis denied
3 him medical treatment by placing him in a holding cell for thirteen
4 hours and ignoring his complaint that he was experiencing pain in
5 his right ankle and needed medical treatment.  Plaintiff's inability
6 to receive medical treatment for ankle pain for thirteen hours does
7 not rise to the level of deliberate indifference to a serious
8 medical need.  Therefore, this claim against Officer Davis is
9 dismissed.

10                          C

11       Plaintiff attempts to state First Amendment retaliation
12 violations in claims 5, 10, 11, 12, 14, 17, 20, and 21.

13       "Within the prison context, a viable claim of First
14 Amendment retaliation entails five basic elements:  (1) An assertion
15 that a state actor took some adverse action against an inmate
16 (2) because of (3) that prisoner's protected conduct, and that such
17 action (4) chilled the inmate's exercise of his First Amendment
18 rights, and (5) the action did not reasonably advance a legitimate
19 correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th
20 Cir. 2005) (footnote omitted).

21       In claim 5, Plaintiff alleges that, during a search of his
22 cell, Officer Clemons found on Plaintiff's bunk a piece of paper,
23 tightly rolled up with a piece of paper clip attached.  Plaintiff
24 explained that he was using it as a medical device for his herpes.
25 Nurse Carson also told Lt. Diggle that Plaintiff was using the paper
26 clip as a medical device.  Nevertheless, Lt. Diggle placed Plaintiff
27 in ad seg for possessing the paper clip.  Plaintiff alleges that Lt.

28

1  Diggle did this in retaliation for Plaintiff's filing grievances
2  against other officers for labeling him as a snitch.

3        Liberally construed, these allegations state a claim
4  against Lt. Diggle.  However, because Plaintiff does not allege that
5  Officer Clemons was involved in the decision to place Plaintiff in
6  ad seg, the allegations fail to state a claim against Officer
7  Clemons and the claim against him is dismissed.

8        In claim 10, Plaintiff alleges that "prison officials"
9  manipulated psychologists Drs. Arcuri and Butter to raise
10 Plaintiff's level of care to "EOP" in retaliation for filing
11 grievances against prison officials and medical officers.  Plaintiff
12 does not indicate which prison officials manipulated these
13 psychologists nor does he allege that the Defendant psychologists
14 raised his level of care to retaliate against him.  Therefore, these
15 allegations do not state a claim and this claim is dismissed against
16 Drs. Arcuri and Butter.

17       In claim 11, Plaintiff alleges that Officer Pope had
18 Plaintiff unassigned from his work positions because Officer Pope
19 did not like Plaintiff.  Plaintiff also alleges that Officer Pope
20 repeatedly harassed and disrespected him.  These allegations are
21 insufficient to state a claim against Officer Pope and the claim
22 against him is dismissed.

23       In claim 12, Plaintiff alleges that psychologists Drs.
24 Huges and Gonzales and Officer Milton raised Plaintiff's level of
25 care to EOP in retaliation for Plaintiff's reporting that Dr. Huges
26 had breached confidentiality.  These allegations fail to state a
27 claim against any Defendant and it is dismissed.

28
                                 7

1    In claim 14, Plaintiff alleges that Warden Lewis and
2 Captain Wood had Officer Clemons transfer Plaintiff from A1
3 Segregation Housing Unit to A3 Segregation Housing Unit to get
4 Plaintiff to withdraw his grievance against the Classification
5 Committee for failing "to bring him to classification within 10 days
6 for Plaintiff's 114 hearing."  Construed liberally, these
7 allegations state a claim against Warden Lewis and Captain Wood.
8 Because Officer Clemons is alleged just to have followed orders from
9 Lewis and Wood, the allegations fail to state a claim against
10 Officer Clemons and the claim against him is dismissed.

11    In claim 17, Plaintiff alleges that he filed a grievance
12 requesting that he be reassigned work group privileges and his
13 position as a barber, however, Defendants documented false
14 information "to put Plaintiff's life in danger."  Plaintiff fails to
15 name a Defendant in regard to these allegations.  Therefore, these
16 allegations fail to state a claim and are dismissed.

17    In claim 20, Plaintiff alleges that Officers Royal and
18 Milton and Captain Wood placed Plaintiff on C status in retaliation
19 for Plaintiff filing grievances against prison officials.  Liberally
20 construed, this states a claim against these Defendants.

21    In claim 21, Plaintiff states that Officer Turner removed
22 the face covers from Plaintiff's grievances causing Plaintiff to
23 miss a court deadline.  This allegation fails to state a claim
24 against Officer Turner and the claim is dismissed.

25                                    D

26    Plaintiff attempts to state due process violations in
27 regard to disciplinary hearings in claims 6, 7, 13, 16, and 22.

28
                                     8

1    The Due Process Clause of the Fourteenth Amendment of the
2    United States Constitution protects individuals against governmental
3    deprivations of life, liberty or property without due process of
4    law.  Changes in conditions of confinement for a prison inmate may
5    amount to a deprivation of a constitutionally protected liberty
6    interest, provided that the liberty interest in question is one of
7    "real substance."  Sandin v. Conner, 515 U.S. 472, 477-87 (1995).
8    An interest of "real substance" will generally be limited to freedom
9    from (1) restraint that imposes "atypical and significant hardship
10   on the inmate in relation to the ordinary incidents of prison life,"
11   id. at 484, or (2) state action that "will inevitably affect the
12   duration of [a] sentence," id. at 487.  In determining whether a
13   restraint is an "atypical and significant hardship," courts consider
14   whether the challenged condition mirrored the conditions imposed on
15   inmates in administrative segregation and protective custody, the
16   duration of the condition, the degree of restraint imposed, and
17   whether the discipline will invariably affect the duration of the
18   prisoner's sentence.  Serrano v. Francis, 345 F.3d 1071, 1078 (9th
19   Cir. 2003); Ramirez v. Galaza, 334 F.3d 850, 861 (9th Cir. 2003).

20   In claim 6, Plaintiff alleges that, on November 15, 2008,
21   Lt. James heard Plaintiff's disciplinary hearing and denied
22   Plaintiff's request to call witnesses.  Although Lt. James found
23   Plaintiff guilty, which caused Plaintiff to lose 360 days of credit,
24   on January 16, 2009, Lt. James' findings were reversed and Plaintiff
25   was granted a new hearing.

26   Because the loss of 360 days of credit was reversed,
27   Plaintiff did not suffer an atypical and significant hardship as a

28
                                    9

1   result of Lt. James' actions.  Therefore, these allegations do not
2   state a claim and it is dismissed.
3           In claim 7, Plaintiff alleges that, at another
4   disciplinary hearing, Lt. Anthony did not allow Plaintiff's witness,
5   Nurse Carson, to testify even though Warden Lewis had ordered that
6   Carson be allowed to testify.  As a result, Lt. Anthony found
7   Plaintiff guilty and Plaintiff lost 360 days of credit.  Construed
8   liberally, these allegations state a claim against Lt. Anthony.
9           In claim 13, Plaintiff alleges that Warden Lewis, Captain
10  Wood and Officer Ryan failed to bring Plaintiff to his disciplinary
11  hearing within ten days and Plaintiff was placed in ad seg.  Even
12  construed liberally, these allegations do not state a claim and the
13  claim is dismissed.
14          In claims 16 and 22, Plaintiff alleges that Lt. Diggle
15  denied Plaintiff's request to have Lt. Pepiot appear as a witness at
16  his disciplinary hearing.  These allegations fail to state a claim
17  and the claims are dismissed.
18                              E
19          Plaintiff also attempts to state several Eighth Amendment
20  claims for cruel and unusual punishment.
21          In its prohibition of "cruel and unusual punishment," the
22  Eighth Amendment places restraints on prison officials, who may not,
23  for example, use excessive force against prisoners.  Hudson v.
24  McMillian, 503 U.S. 1, 6-7 (1992).  Where a prisoner claims that
25  prison officials used excessive force, he must show that the
26  officials applied force maliciously and sadistically to cause harm.
27  Id.; Furnace v. Sullivan, 705 F.3d 1021, 1030 (9th Cir. 2013).
28
                                10

Although the Eighth Amendment protects against cruel and unusual punishment, this does not mean that federal courts can or should interfere whenever prisoners are inconvenienced or suffer de minimis injuries.  Hudson, 503 U.S. at 9-10.  In determining whether the use of force was for the purpose of maintaining or restoring discipline, or for the malicious and sadistic purpose of causing harm, a court may evaluate the need for application of force, the relationship between that need and the amount of force used, the extent of any injury inflicted, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response.  Id., 503 U.S. at 7; LeMaire v. Maass, 12 F.3d 1444, 1454 (9th Cir. 1993); see also Spain v. Procunier, 600 F.2d 189, 195 (9th Cir. 1979) (guards may use force only in proportion to need in each situation).

In claim 3, Plaintiff alleges that Sgt. Acosta and Officer Castellaw searched Plaintiff's cell and confiscated Plaintiff's legal documents about his case and then leaked this information to other inmates in order to label Plaintiff a snitch.  Furthermore, these Defendants knew that Plaintiff's co-defendant was an informant for the Los Angeles Police Department and that exposing this information to other inmates would put Plaintiff's life in danger.  Plaintiff infers that his life was in danger by alleging that, soon after Defendants confiscated Plaintiff's legal documents, inmates began asking Plaintiff about his case and his co-defendant.

Construing these allegations liberally, they state a claim for cruel and unusual punishment against Defendants Acosta and Castellaw.

11

1    In claim 23, Plaintiff alleges that, after Plaintiff

2  allegedly assaulted Officer Evans with his saliva, Officer Evans

3  used excessive force against Plaintiff, causing injuries to

4  Plaintiff's face, nose and wrist.

5    Construed liberally, these allegations state a claim for

6  excessive force against Officer Evans.

7                                 F

8    In claims 18 and 19, Plaintiff attempts to allege claims

9  based on other constitutional violations.  In claim 18, Plaintiff

10 alleges that "prison officials" confiscated his transcripts and

11 distributed them to other inmates in order to get Plaintiff stabbed.

12 Plaintiff does not indicate any individual who was responsible for

13 this conduct.  Furthermore, this claim appears to be duplicative of

14 claim 3, discussed above.  Therefore, this claim is dismissed.

15    In claim 19, Plaintiff alleges that he received a rules

16 violation report (RVR) from Officer Davis, who placed Plaintiff in a

17 holding cell for thirteen hours and denied him medical treatment

18 during this time.  His RVR was heard by Lt. Pepiot, who found

19 Plaintiff guilty and, as a result, Plaintiff lost 360 days credit

20 and, for ninety days, his family visits, telephone calls,

21 recreational and entertainment activities were restricted.  Even

22 construed liberally, these allegations fail to state a claim and

23 this claim is dismissed.

24                               III

25    For the foregoing reasons, the Court hereby orders as

26 follows:

27    1.  The following nine claims are found to be cognizable:

28
                                  12

(a) claim 4--Eighth Amendment deliberate indifference claim against Defendant Ms. Tupman; (b) claims 8 and 9--Eighth Amendment deliberate indifference claims against Defendants Drs. Crinklaw and Malo-Clines; (c) claim 5--First Amendment retaliation claim against Lt. Diggle; (d) claim 14--First Amendment retaliation claim against Warden Lewis and Captain Wood; (e) claim 20--First Amendment retaliation claim against Captain Wood and Officers Royal and Milton; (f) claim 7--Due Process claim against Lt. Anthony; (g) claim 3--Eighth Amendment excessive force claim against Sgt. Acosta and Officer Evans; and (h) claim 23--Eighth Amendment excessive force claim against Officer Evans.  The Clerk shall issue summons and the United States Marshal shall serve, without prepayment of fees, copies of the amended complaint in this matter and all attachments thereto and copies of this order on the following PBSP employees: Ms. Tubman; Dr. Crinklaw; Dr. Malo-Clines; Lt. Diggle; Warden Lewis; Captain Wood; Officer Royal; Officer Hilton; Lt. Anthony; Sgt Acosta; and Officer Evans.  The Clerk shall also serve a copy of this order on Plaintiff and mail a courtesy copy of this Order and the amended complaint to the California Attorney General's Office.

2.  All other claims are dismissed for failure to state a claim upon which relief may be granted.  These claims are dismissed without leave to amend as Plaintiff has already been provided an opportunity to amend and it is clear that no amount of amendment will cure the deficiencies the Court has identified.

3.  To expedite the resolution of this case, the Court orders as follows:

13

a.   No later than sixty-three (63) days from the date of this order, Defendants shall file a motion for summary judgment or other dispositive motion.  A motion for summary judgment shall be supported by adequate factual documentation and shall conform in all respects to Federal Rule of Civil Procedure 56, and shall include as exhibits all records and incident reports stemming from the events at issue.  Defendants' motion shall include the required Ninth Circuit notice to Plaintiff for opposing dispositive motions required by Rand v. Rowland, 154 F.3d 952, 962-63 (9th Cir. 1998)(motion for summary judgment) and Wyatt v. Terhune, 315 F.3d 1108, 1120 n.14 (9th Cir. 2003) (motion to dismiss).  If Defendants are of the opinion that this case cannot be resolved by summary judgment or other dispositive motion, they shall so inform the Court prior to the date their motion is due.  All papers filed with the Court shall be served promptly on Plaintiff.

b.   Plaintiff's opposition to the dispositive motion shall be filed with the Court and served upon Defendants no later than thirty-five (35) days after Defendants serve Plaintiff with the motion.

c.   Plaintiff is advised that a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case.  Rule 56 tells you what you must do in order to oppose a motion for summary judgment.  Generally, summary judgment must be granted when there is no genuine issue of material fact - that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which

14

will end your case.  When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your amended complaint says.  Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that contradict the facts shown in Defendants' declarations and documents and show that there is a genuine issue of material fact for trial.  If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you.  If summary judgment is granted, your case will be dismissed and there will be no trial. Rand, 154 F.3d at 962–63.

        Plaintiff also is advised that a motion to dismiss for failure to exhaust administrative remedies under 42 U.S.C. § 1997e(a) will, if granted, end your case, albeit without prejudice.  You must "develop a record" and present it in your opposition in order to dispute any "factual record" presented by the Defendants in their motion to dismiss.  Wyatt, 315 F.3d at 1120 n.14.

        d.   Defendants shall file a reply brief within fourteen (14) days of the date on which Plaintiff serves them with the opposition.

        e.   The motion shall be deemed submitted as of the date the reply brief is due.  No hearing will be held on the motion unless the Court so orders at a later date.

        3.   Discovery may be taken in accordance with the Federal Rules of Civil Procedure.  No further court order is required before

the parties may conduct discovery.

       4.   All communications by Plaintiff with the Court must be served on Defendants, or Defendants' counsel once counsel has been designated, by mailing a true copy of the document to Defendants or Defendants' counsel.

       5.   It is Plaintiff's responsibility to prosecute this case.  Plaintiff must keep the Court and all parties informed of any change of address and must comply with the Court's orders in a timely fashion.  Failure to do so may result in the dismissal of this action pursuant to Federal Rule of Civil Procedure 41(b).

       IT IS SO ORDERED.

DATED       _05/15/2013_                                  

                                        THELTON E. HENDERSON
                                        United States District Judge

G:\PRO-SE\TEH\CR.13\Gibbs v Carson 13-860 Serve Cognizable Claims.wpd

16