1
2
3
4                    UNITED STATES DISTRICT COURT

5                 NORTHERN DISTRICT OF CALIFORNIA

6

7   KENNETH GIBBS,                    Case No.   13-cv-0860-TEH

              Plaintiff,
8                                     ORDER GRANTING DEFENDANT'S
         v.                           MOTION FOR SUMMARY JUDGMENT
9
                                      Doc. No. 168
10  CARSON, et. al.,

              Defendants.
11

12

13       Plaintiff Kenneth Gibbs, a state prisoner, filed this pro se

14  action under 42 U.S.C. § 1983.  The case proceeds against

15  Defendant Anthony for a claim that he violated Plaintiff's due

16  process rights by denying a witness at a 2009 disciplinary

17  hearing.[1]  Defendant has filed a motion for summary judgment.

18  Plaintiff has opposed the motion and Defendant filed a reply.

19  For the reasons that follow, Defendant's motion is GRANTED.

20                                I

21       Plaintiff was incarcerated at Pelican Bay Stay Prison

22  ("PBSP") during the relevant time.[2]  Second Amended Complaint

23  ("SAC"), Docket No. 89 at 25 of 50.[3]  Plaintiff is serving a

24  prison term of life without the possibility of parole.  Motion

25

26  ───────────────
    [1] Many other Defendants and claims were previously dismissed from
27  this case.
    [2] The following facts, unless otherwise noted, are undisputed.
28  [3] The Court refers to all page numbers in the SAC as they appear
    in the Court's electronic docket.

for Summary Judgment ("MSJ"), Request for Judicial Notice ("RJA"), Ex. A.[4]  Defendant Anthony was a correctional lieutenant during the relevant time.  H served as the senior hearing officer for Plaintiff's disciplinary hearing.  MSJ, Van Loh Decl., Ex. G at 1.

On October 9, 2008, prison staff searched Plaintiff's cell and discovered an inmate-manufactured weapon.  Id., Ex. C at 2. The weapon was a ten-inch-long tightly rolled cylinder of paper topped with a sharpened metal tip.  Id. at 2-5.[5]  The weapon was confiscated and Plaintiff was found guilty at a hearing on the Rules Violation Report ("RVR") by another correctional officer. Id., Ex. E.

Plaintiff filed an administrative appeal challenging the RVR on the grounds that he had not been allowed to call witnesses during the RVR hearing.  Id., Ex. F at 1-3.  Plaintiff stated that he wanted to call medical witnesses to demonstrate that the confiscated weapon was in fact a medical device he made to pop herpes blisters in his mouth.  Id. at 3-6.  The warden reviewed the appeal and issued a modification requiring the RVR to be reheard because the senior hearing officer should have contacted the medical witnesses as part of the investigation.  Id. at 4-5.

The RVR was reissued on March 24, 2009.  MSJ, Van Loh Decl., Ex. G at 1.  Defendant Anthony served as the senior hearing officer for the new RVR hearing.  Id. at 4-5.  Defendant Anthony assigned Officer Basnett to help Plaintiff gather information for

---

[4] The Court takes judicial notice of these public records.  Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001).
[5] A photocopy of the weapon was provided.  MSJ, Van Loh Decl., Ex. G at 5.

his defense.  Id. at 2.  Plaintiff told Officer Basnett that the confiscated weapon was a medical device he used to pop blisters and that Nurse Carson verbally authorized Plaintiff to use it. Id. at 2.

Officer Basnett spoke to Nurse Carson who stated that no medical device was authorized for Plaintiff because the medication provided to him was sufficient to treat the blisters. Id. at 3.  After being shown a picture of the weapon, Nurse Carson stated that medical staff would not have authorized such a device for Plaintiff.  Id.

Plaintiff disputes this and states that Nurse Carson authorized him to use the device.  Opposition at 8-9.  Plaintiff includes an affidavit from Nurse Carson to support his assertion. Opposition, Ex. B.  However, the affidavit states, "I saw the numerous blisters in [inmate/patient] Gibbs mouth, [inmate/patient] was not being seen after 1 reported problem, [inmate/patient] Gibbs was using instrument to pop blisters." Id.

Nurse Carson did state that Plaintiff showed her a sharpened paper clip he had been using to pop blisters.  MSJ, Van Loh Decl., Ex. G at 5.  It was only about two inches long and did not have a handle.  Id.

Defendant Anthony conducted the hearing for the reissued RVR on May 3, 2009.  Id. at 4.  Plaintiff requested five witnesses: Officer Clemons and Lieutenant Diggle to discuss their conversation with Nurse Carson about the alleged weapon; psychologist Archambault to describe his findings; Officer Night to relay a conversation that Plaintiff had with a dental

3

assistant; and Nurse Carson to state that she approved the alleged weapon.  Id. at 4-5.

Defendant Anthony granted the requests for witnesses Clemons and Diggle.  Id. at 4.  Defendant Anthony denied the request for Archambault because he was not involved in the investigation and had no knowledge of relevant issues.  Id. at 4.  Defendant Anthony denied the request for Night, because Plaintiff could describe the conversation with the dental assistant and because Night's testimony would be cumulative.  Id.  Defendant Anthony denied the request for Nurse Carson because her testimony was in Officer Basnett's report; Clemons and Diggle could testify about their conversations with her about the alleged weapon; and Nurse Carson was not on duty at the time of the hearing.  Id. at 5.

After the hearing, Defendant Anthony found Plaintiff guilty of possession of a weapon.  Id. at 6.  He found that the device was a deadly weapon capable of inflicting serious or lethal injury.  Id.  Defendant Anthony rejected Plaintiff's testimony that medical staff instructed him to make the device for medical reasons.  Id.  Defendant Anthony found that even if Plaintiff used the device to pop blisters, it could also have been used as a deadly weapon.  Id.

Plaintiff was assessed a 360-day forfeiture of good-time credits and a twelve-month Security Housing Unit ("SHU") term. Id. at 7.  Yet, the SHU term was not imposed because on June 9, 2009, the Institutional Classification Committee suspended it and released Plaintiff to general population.  MSJ, Van Loh Decl., Exs. H, I.

## II

### A

Summary judgment is properly granted when no genuine disputes of material fact remain and when, viewing the evidence most favorably to the nonmoving party, the movant is clearly entitled to prevail as a matter of law.  Fed. R. Civ. P. 56(c); Celotex v.Catrett, 477 U.S. 317, 322-23 (1986); Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir. 1987).  The moving party bears the burden of showing there is no material factual dispute.  Celotex, 477 U.S. at 331.  Therefore, the Court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material.  Id. at 324; Eisenberg, 815 F.2d at 1289.  The Court must draw all reasonable inferences in favor of the party against whom summary judgment is sought.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1559 (9th Cir. 1991).

The moving party bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323.  If the moving party meets its burden of production, the burden then shifts to the opposing party to produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." Bhan v. NME Hosps., Inc., 929 F.2d 1404, 1409 (9th Cir.) cert. denied, 502 U.S. 994 (1991); Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1105 (9th Cir. 2000).

Material facts that would preclude entry of summary judgment

are those which, under applicable substantive law, may affect the outcome of the case.  The substantive law will identify which facts are material.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  Questions of fact regarding immaterial issues cannot defeat a motion for summary judgment.  <u>Reynolds v. County of San Diego</u>, 84 F.3d 1162, 1168-70 (9th Cir. 1996), <u>rev'd on other grounds by</u> <u>Acri v. Varian Associates, Inc.</u>, 114 F.3d 999 (9th Cir. 1997).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  <u>Anderson</u>, 477 U.S. at 248.

B

Interests protected by the Due Process Clause may arise from two sources: the Due Process Clause itself and laws of the states.  <u>See</u> <u>Meachum v. Fano</u>, 427 U.S. 215, 223-27 (1976). Changes in conditions so severe as to affect the sentence imposed in an unexpected manner implicate the Due Process Clause itself, whether or not they are authorized by state law.  <u>See</u> <u>Sandin v. Conner</u>, 515 U.S. 472, 484 (1995).  Deprivations authorized by state law that are less severe or more closely related to the expected terms of confinement may also amount to deprivations of a procedurally protected liberty interest, provided that (1) state statutes or regulations narrowly restrict the power of prison officials to impose the deprivation, i.e., give the inmate a kind of right to avoid it, and (2) the liberty in question is one of "real substance."  <u>See</u> <u>id</u>. at 477-87.

Allegations by a prisoner that he was denied due process in conjunction with a disciplinary proceeding do not present a constitutionally cognizable claim, however, unless the

6

United States District Court
Northern District of California

deprivation suffered is one of "real substance" as defined in Sandin.  "Real substance" will generally be limited to freedom from (1) restraint that imposes "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," id. at 484 or (2) state action that "will inevitably affect the duration of [a] sentence," id. at 487.  In determining whether a restraint is an "atypical and significant hardship," Sandin suggests that courts should consider whether the challenged condition mirrored the conditions imposed on inmates in administrative segregation and protective custody, and thus comported with the prison's discretionary authority; the duration of the condition; the degree of restraint imposed; and whether the discipline will invariably affect the duration of the prisoner's sentence.  See Serrano v. Francis, 345 F.3d 1071, 1078 (9th Cir. 2003).

Prisoners retain their right to due process subject to the restrictions imposed by the nature of the penal system.  See Wolff v. McDonnell, 418 U.S. 539, 556 (1974).  Thus although prison disciplinary proceedings are not part of a criminal prosecution and the full panoply of rights due a defendant in such proceedings does not apply, where serious rules violations are alleged and the sanctions to be applied implicate state statutes or regulations which narrowly restrict the power of prison officials to impose the sanctions and the sanctions are severe, the Due Process Clause requires certain minimum procedural protections.  See id. at 556-57, 571-72 n.19.

Wolff established five procedural requirements.  First, "written notice of the charges must be given to the disciplinary-

action defendant in order to inform him of the charges and to enable him to marshal the facts and prepare a defense." Wolff, 418 U.S. at 564.  Second, "[a]t least a brief period of time after the notice, no less than 24 hours, should be allowed to the inmate to prepare for the appearance before the [disciplinary committee]." Id.  Third, "there must be a 'written statement by the factfinders as to the evidence relied on and reasons' for the disciplinary action." Id. (quoting Morrissey v. Brewer, 408 U.S. 471, 489 (1972)).  Fourth, "the inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." Id. at 566; Fifth, "[w]here an illiterate inmate is involved . . . or [where] the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case, he should be free to seek the aid of a fellow inmate, or . . . to have adequate substitute aid . . . from the staff or from a[n] . . . inmate designated by the staff." Wolff, 418 U.S. at 570.

The Court specifically held that the Due Process Clause does not require that prisons allow inmates to cross-examine their accusers, see id. at 567-68, and does not give rise to a right to counsel in the proceedings, see id. at 569-70.

III

Plaintiff contends there was a violation of the fourth Wolff protection because he was not allowed to call Nurse Carson as a witness in his defense.  Defendant first argues that Plaintiff

8

was not deprived of a protected liberty interest.

Defendant asserts that there was no deprivation under <u>Sandin</u> because Plaintiff did not suffer an atypical and significant hardship and because the duration of his sentence was not affected.  An inmate whose lost good-time credits are restored has failed to identify a protected liberty interest because the length of the sentence was not affected.  <u>See</u> <u>Womack v. Grannis</u>, 453 F. App'x 713 (9th Cir. 2011).

In this case, Plaintiff was assessed a 360-day forfeiture of good-time credits and a twelve-month SHU term.  While the good-time credits were not restored, it is undisputed that Plaintiff is serving a prison term of life without the possibility of parole; therefore, the forfeiture of credits does not affect Plaintiff's sentence because there is no possibility of parole. <u>See</u> <u>Pena v. Spearman</u>, No. C 13-3983 SBA (PR), 2015 WL 435062, at *3 (N.D. Cal. Feb. 2, 2015) (disciplinary finding resulting in loss of time credits did not affect duration of sentence because plaintiff is serving a life sentence).

Nor was there an atypical and significant hardship as a result of the RVR.  The twelve-month SHU term was suspended approximately one month after Defendant found Plaintiff guilty, and Plaintiff was returned to general population.  Typically, placement in segregated housing in and of itself does not implicate a protected liberty interest.  <u>See</u> <u>Serrano</u>, 345 F.3d at 1078; <u>see</u>, <u>e.g.</u>, <u>Sandin</u>, 515 U.S. at 485-86 (inmate's thirty-day placement in disciplinary segregation, where conditions mirrored conditions imposed upon inmates in administrative segregation and protective custody, did not result in type of atypical,

significant deprivation).  While Plaintiff may have been in segregated housing prior to the reissued RVR, there are no allegations that Defendant Anthony was involved in that placement.  Defendant Anthony's sole involvement in this case was serving as hearing officer for the second disciplinary hearing. Because Defendant Anthony did not affect the duration of Plaintiff's sentence when he imposed a punishment that did not cause atypical and significant hardship, summary judgment is granted for Defendant.

Even if there was a deprivation of a protected liberty interest, Plaintiff still received all the procedural protections required.  His only allegation is that Defendant Anthony denied one witness, Nurse Carson.  It is undisputed that Plaintiff requested five witnesses and that two of the five were provided.

Prison officials are not required to place in the "administrative record" their reasons for refusing to allow witnesses to testify, but may wait to provide the explanation in court if the refusal is challenged.  See Ponte v. Real, 471 U.S. 491, 497 (1985).  But see Serrano, 345 F.3d at 1079-80 (finding a due process violation where hearing officer failed to offer a convincing explanation for why he did not allow witnesses and failed to follow state regulation requiring him to document his reasons for refusing to grant inmate's request for a witness). Prison officials can note that the reason for denying a witness may be for "irrelevance, lack of necessity, or the hazards presented in individual cases."  Wolff, 418 U.S. at 566.

In this case, Defendant Anthony described the reasons for denying Nurse Carson.  He denied the request because her

United States District Court
Northern District of California

testimony was in Officer Basnett's report; witnesses Clemons and Diggle would be available to testify about their conversations with her about the alleged weapon; and Nurse Carson was not on duty at the time of the hearing.  Plaintiff's rights were not violated because Nurse Carson's testimony was presented through other witnesses and reports.  There is no indication that Nurse Carson's testimony would have differed from what was conveyed by the reports and other witnesses.  The testimony indicated that she did not give Plaintiff permission for any type of medical device, let alone some sharpened metal at the end of a ten-inch handle.  The testimony also reflected that she was aware that he was using another device, a two-inch paper clip, to pop his blisters.

Plaintiff contends that she would have testified that she gave him permission to have the confiscated device in order to pop his blisters.  However, this contention is contradicted by Plaintiff's own evidence.  Plaintiff has submitted an affidavit from Nurse Carson stating that she was aware he was using another instrument to pop his blisters.  She does not state that she gave him permission or authorization for the confiscated device.

Even if Nurse Carson gave permission for the use of a paper clip, she did not approve a ten-inch handle with a metal point.  Regardless, even if such a device had a medical use, Defendant Anthony found that it was still a deadly weapon.

Summary judgment is granted to Defendant Anthony because the undisputed facts demonstrate that there was no due process violation.  While Nurse Carson did not testify, her statements that she was aware of Plaintiff using a two-inch paper clip to

pop his blisters were presented and considered by Defendant Anthony.  Regardless of her not testifying, there was no deprivation of a protected liberty interest because Plaintiff's sentence was not affected and there was no atypical and significant hardship because the SHU-term was suspended and Plaintiff was released to general population.[6]

Even if Defendant Anthony violated Plaintiff's due process rights, Anthony is still entitled to qualified immunity.  It would not be clear to a reasonable official that denying an inmate's request to have a witness testify at a disciplinary hearing would be unlawful when the substance of the witness' testimony was presented through other witnesses and reports.  For all these reasons the motion for summary judgment is granted.

IV

For the foregoing reasons, the Court hereby orders as follows:

1.  Defendant's motion for summary judgment (Docket No. 168) is GRANTED.

2.  The Clerk shall close the file.  This order terminates Docket No. 168.

IT IS SO ORDERED.

Dated: 02/17/2016

THELTON E. HENDERSON
United States District Judge

G:\PRO-SE\TEH\CR.13\Gibbs0860.sj2.docx

---

[6] This action does not concern the sufficiency of the evidence to find Plaintiff guilty of the RVR, just the denial of the witness at the RVR hearing.